1

2

3

4

5

6                          IN THE UNITED STATES DISTRICT COURT

7                       FOR THE NORTHERN DISTRICT OF CALIFORNIA

8

9    GLEN MARCH,                                  No. C 14-00512 SI

10              Plaintiff,                        **ORDER**

11                                                **- GRANTING DEFENDANTS' MOTIONS
                                                  TO DISMISS WITH LEAVE TO AMEND**
      v.
12                                                **- GRANTING SPECIAL MOTION BY
     TWIN CITIES POLICE AUTHORITY, et. al.,       DEFENDANTS WOODRUFF AND**
13                                                **RIMES TO STRIKE AND FOR
                                                  ATTORNEY'S FEES**
              Defendants.
14   _____/

15

16          Presently before the Court are the following three motions: (1) a motion by defendants Central

17   Marin Police Authority successor to the Twin Cities Police Authority,[1] James Shirk, David Woo, Jenna

18   McVeigh, and Hamid Khalili ("the Police defendants") to dismiss plaintiff's first amended complaint;[2]

19   (2) a motion by defendants City of Larkspur, Leonard Rifkind, Dan Schwarz, Robert Sinnott, and

20   Cynthia Huisman ("the City defendants") to dismiss plaintiff's first amended complaint; and (3) a

21   motion by defendants Sky Woodruff and Anita Rimes to dismiss plaintiff's first amended complaint,

22   to strike claims 7 and 8 from the first amended complaint under California's Anti-Slapp Law, and for

23   attorney's fees.  Docket Nos. 21, 22, 25.  On July 10, 2014, the Court took the matter under submission.

24   Docket No. 51.  For the reasons set forth below, the Court GRANTS defendants' motions to dismiss

25   _____

26          [1] The Central Marin Police Authority is the successor police entity to the Twin Cities Police
     Authority, which no longer exists.  Docket No. 21 at 1 n.1; Docket No. 18, First Amended Complaint
     ("FAC") ¶¶ 2-3.

27          [2] On May 15, 2014, defendants Central Marin Police Authority, Shirk, Woo, and McVeigh filed
     the present motion to dismiss.  Docket No. 21.  On June 9, 2014, defendant Khalili filed a notice of
28   joinder in the previously filed motion to dismiss.  Docket No. 44.

**United States District Court**
For the Northern District of California

WITH LEAVE TO AMEND, and the Court GRANTS defendants Woodruff and Sky's special motion to strike and motion for attorney's fees.

**BACKGROUND**

The following allegations are taken from the First Amended Complaint.  Plaintiff is a former resident of the City of Larkspur.  Docket No. 18, FAC ¶ 1.  In April 2007, plaintiff purchased a fixer-upper house at 143 Madrone Avenue, Larkspur, CA 94939.  *Id.* ¶ 36.  Plaintiff's home was near Arroyo Holon Creek.  *Id.* ¶ 37.

Plaintiff submitted a proposed project to the City of Larkspur that required a  flood plain determination.  *Id.* ¶¶ 38-42.  In 2009 and 2010, an Assistant Planner for the City of Larkspur made flood plain determinations on plaintiff's proposal.   *Id.* ¶ 42.   Plaintiff disagreed with these determinations and obtained a letter of map amendment ("LOMA") from the Federal Emergency Management Agency ("FEMA"), which determined the base flood elevation ("FEMA BFE") of the creek in the vicinity of the property.  *Id.* ¶ 45-48.  On February 9, 2012, the Flood Plain Administrator for the City of Larkspur accepted the FEMA BFE, but later in February 2012, the Interim Planning Director refused to recognize the FEMA BFE.  *Id.* ¶¶ 50.  Plaintiff alleges that from March 2012 to August 2012, he attempted to resolve the situation through several communications with then Mayor and City Councilman Leonard Rifkind, City Manager Dan Schwarz, and other city officials.  *Id.* ¶¶ 52-67.  On August 7, 2012, the City's Flood Plain Administrator again accepted the FEMA BFE, and a Planning Commission hearing date was set for August 28, 2012.  *Id.* ¶¶ 62, 64.

On August 11, 2012 at approximately 11:30 p.m., plaintiff had a conversation with Sean McLeod at a local dive bar.  FAC ¶ 68.  Plaintiff alleges that he was being sarcastic and facetious and that he did not make any criminal threats during the conversation, but plaintiff does not allege what he actually said to Mr. McLeod during this conversation.  *Id.* ¶¶ 18, 70-71.  Plaintiff alleges that he never mentioned the name Daryl Philips or the name Leonard Rifkind.  *Id.* ¶¶ 100, 120.

The following morning, Mr. McLeod spoke to Deputy City Manager Robert Sinnott and told him

United States District Court
For the Northern District of California

2

that plaintiff made threatening statements about three people.[3]  FAC ¶¶ 76-77.  Plaintiff alleges that during the conversation, Mr. McLeod did not identify Building Official Daryl Philips or Mayor Rifkind.  *Id.* ¶¶ 103, 122.  At 11:02 a.m. that same day, Mr. Sinnott sent an email to Captain Shirk of the Central Marin Police Authority summarizing his conversation with Mr. McLeod about the alleged threats.  *Id.* ¶ 79.  In the email, Mr. Sinnott stated that plaintiff told Mr. McLeod that he was going to kill Mayor Rifkind and Building Official Daryl Philips.  *Id.* ¶ 82; Docket No. 12, Request for Judicial Notice ("RJN") Ex. 1 at 8.[4]  Mr. Sinnott also stated in the email that during his conversation with Mr. McLeod, plaintiff stated that "he 'chased the mayor out to the freeway a few days ago with the intent to do harm but couldn't catch up to him.'"  Docket No. 12, RJN Ex. 1 at 8.  Plaintiff alleges that Mr. Sinnott knew that the claims in the email were false because Mr. McLeod did not identify Building Official Daryl Philips or Mayor Rifkind.  *Id.* ¶ 80.  Captain Shirk informed Mayor Rifkind's wife and Mr. Philips about the alleged threats and forwarded the email to Detective Woo.  *Id.* ¶¶ 84-87.

At approximately 3:30 p.m. on August 12, 2012, detective Woo began interviewing Mr. McLeod.  FAC ¶ 95.  During the interview, Mr. McLeod told detective Woo that Mr. Philips was not mentioned during his conversation with plaintiff.  *Id.* ¶ 106.  Mr. McLeod told detective Woo that, instead, a foreign sounding name was mentioned.  *Id.* ¶ 108.  Detective Woo suggested that the name might have been Hamid Shamsapour because he was the only person detective Woo knew that worked for the city with a foreign sounding name.  *Id.* ¶¶ 109-110.  It appears that plaintiff's alleged statements regarding Mayor Rifkind were discussed during the interview, but plaintiff's allegations are unclear.  *See id.* ¶¶ 127-28 ("During the interview, Defendant Detective Woo continued that the 'Mayor.' Defendant Detective Woo did not attempt to identify another name.").  Plaintiff alleges that the

---

[3] Plaintiff does not allege the identities of these three people.

[4] Mr. Sinnott's email was attached to the petition for workplace violence restraining orders that was filed by defendant Rimes with the Marin County Superior Court.  Docket No. 12, RJN Ex. 1.  Accordingly, pursuant to Federal Rule of Evidence 201, the Court takes judicial notice of the email because it is a matter of public record.  *See Lee v. City of Los Angeles*, 250 F.3d 668, 688-89 (9th Cir. 2001).  However, the Court notes that it only takes judicial notice of the contents of the email.  The Court does not judicial notice of email for the truth of the matters asserted therein.  *See In re Bare Escentuals, Inc. Sec. Litig.*, 745 F. Supp. 2d 1052, 1067 (N.D. Cal. 2010).

**United States District Court**
For the Northern District of California

1    interview ended after he was taken into custody.[5]  *Id.* ¶ 95.

2        On August 12, 2012 at a little after 4:00 p.m., plaintiff was arrested by the San Mateo Police

3    Department at the request of Detective Woo.[6]  FAC ¶ 19-20.  Plaintiff alleges that Officer McVeigh and

4    Sergeant Khalili assisted in the arrest.  *Id.* ¶¶ 92-93.  Plaintiff posted bail and was released from jail after

5    midnight on August 13, 2012.  *Id.* ¶ 99.  On September 21, 2012, the Marin County District Attorney

6    filed two felony counts against plaintiff for making criminal threats in violation of California Penal

7    Code § 76 before the Superior Court of California, Marin County.  FAC ¶ 22.  Count 1 was for making

8    criminal threats against Mayor Rifkind, and Count 2 was for making criminal threats against Mr.

9    Sinnott.  *Id.* ¶¶ 23-24.  On October 9, 2012, the Superior Court sustained plaintiff's demurrer and

10   dismissed Count 2.  *Id.* ¶ 25.  On July 18, 2013, after plaintiff participated in and completed a diversion

11   program, the Superior Court dismissed Count 1.  *Id.* ¶¶ 26-32.

12       On February 3, 2014, plaintiff, proceeding pro se, filed a complaint against defendants Twin

13   Cities Police Authority, Central Marin Police Authority, City of Larkspur, Leonard Rifkind, Larry Woo,

14   Dan Schwarz, Todd Cusimano, James Shirk, David Woo, Vera Hicks, Jenna McViegh, Monte Deignan,

15   Robert Sinnott, Cynthia Guisman, Niel Toft, Anne Moore, Sky Woodruff, and Dennis Reinhart.  Docket

16   No. 1, Compl.  On April 10 and 14, 2014, the defendants filed motions to dismiss and motions to strike

17   plaintiff's complaint.  Docket Nos. 9-11.  On May 1, 2014, plaintiff filed a first amended complaint

18   ("FAC"), mooting the defendants' motions.  Docket No.18.  The FAC names as defendants Twin Cities

19   Police Authority, Central Marin Police Authority, City of Larkspur, Leonard Rifkind, Dan Schwarz,

20   James Shirk, David Woo, Hamid Khalili, Jenna McVeigh, Robert Sinnottt, Cynthia Huisman, Sky

21

22       [5] Plaintiff alleges that prior to interview, detective Woo was informed that Mr. McLeod would
23   not confirm that Len Rifkind was mentioned during his conversation with plaintiff.  FAC ¶¶ 88, 126.

24       [6] On the same day as his arrest, August 12, 2012, Detective Woo and Officer McVeigh obtained
     three emergency restraining orders protecting Mayor Rifkind, Mr. Sinnott, and Mr. Shamsapour, which
25   expired on August 17, 2012.  FAC ¶ 21.  On August 17, 2012, defendant Anita Rimes on behalf of the
     City of Larkspur filed a petition in Marin County Superior Court for a work place violence restraining
26   order naming Mayor Rifkind, Mr. Sinnott, and Mr. Shamsapour as protected persons.  *Id.* ¶ 33, at 28.
     On October 5, 2012, the petition was amended to remove Mr. Shamsapour as a protected person.  *Id.*
27   ¶ 34.  Also on October 5, 2012, the Marin County Superior Court, after a hearing, granted the petition,
     which named Mayor Rifkind and Mr. Sinnott as protected persons.  *Id.* ¶ 35.  The restraining order will
28   expire on October 5, 2015.  *Id.*

1    Woodruff, and Anita Rimes.  *Id.*

2        By the present motions, all of the defendants move to dismiss the FAC pursuant to Federal Rule

3    of Civil Procedure 12(b)(6) for failure to state a claim.  Docket Nos. 21, 22, 25.  In addition, defendants

4    Woodruff and Rimes move under California's Anti-Slapp law to strike claims seven and eight from the

5    FAC and for attorney's fees.  Docket No. 25.

6

7                                    **LEGAL STANDARD**

8        To survive a Rule 12(b)(6) motion to dismiss, the plaintiff must allege "enough facts to state a

9    claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).  This

10   "facial plausibility" standard requires the plaintiff to allege facts that add up to "more than a sheer

11   possibility that a Defendant has acted unlawfully."  *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009).

12   While courts do not require "heightened fact pleading of specifics," a plaintiff must allege facts

13   sufficient to "raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 544, 555.  "A

14   pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of

15   action will not do.'" *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 555).  "Nor does a complaint

16   suffice if it tenders 'naked assertion[s]' devoid of 'further factual enhancement.'"  *Id.*  (quoting

17   *Twombly*, 550 U.S. at 557).  "While legal conclusions can provide the framework of a complaint, they

18   must be supported by factual allegations." *Id.*

19       In reviewing a Rule 12(b)(6) motion, a district court must accept as true all facts alleged in the

20   complaint, and draw all reasonable inferences in favor of the plaintiff. *See al-Kidd v. Ashcroft*, 580 F.3d

21   949, 956 (9th Cir. 2009).  However, a district court is not required to accept as true "allegations that are

22   merely conclusory, unwarranted deductions of fact, or unreasonable inferences." *In re Gilead Scis. Sec.

23   Litig.,* 536 F.3d 1049, 1055 (9th Cir. 2008).  Moreover, "the tenet that a court must accept as true all of

24   the allegations contained in a complaint is inapplicable to legal conclusions." *Iqbal, 556 U.S. at 678.*

25   In considering a motion to dismiss, the court may take judicial notice of matters of public record outside

26   the pleadings. *See MGIC Indemn. Corp. v. Weisman*, 803 F.2d 500, 504 (9th Cir. 1986).  If the Court

27   dismisses a complaint, it must decide whether to grant leave to amend.  The Ninth Circuit has

28   "repeatedly held that a district court should grant leave to amend even if no request to amend the

**United States District Court**
For the Northern District of California

pleading was made, unless it determines that the pleading could not possibly be cured by the allegation of other facts." *Lopez v. Smith*, 203 F.3d 1122, 1130 (9th Cir. 2000) (citations and internal quotation marks omitted).

## DISCUSSION

### I.   Plaintiff's Second and Fourth Causes of Action Pursuant to 42 U.S.C § 1983

Plaintiff's second and fourth causes of action are brought pursuant to 42 U.S.C. § 1983 and allege violations of plaintiff's civil rights.   FAC at 20-24.   The Police defendants and the City defendants both move to dismiss these two causes of action.  Docket No. 21 at 10-14; Docket No. 22 at 12-14.  In response, plaintiff states that he does not object to the Court striking his second and fourth causes of action.  Docket No. 24 at 9-11; Docket No. 29 at 5.  Accordingly, the Court dismisses with prejudice Plaintiff's second and fourth causes of action.

### II.   Plaintiff's Cause of Action for Unlawful Arrest

As his first cause of action, plaintiff alleges a claim against defendants Woo, Khalili, McVeigh, and Sinnott pursuant to 42 U.S.C. § 1983 for unlawful arrest in violation of plaintiff's Fourth Amendment rights.  FAC ¶¶ 152-165.

#### A.   Legal Standards for 42 U.S.C. § 1983

To state a claim under 42 U.S.C. § 1983, Plaintiff must allege that "(1) the defendants acting under color of state law (2) deprived plaintiff[] of rights secured by the Constitution or federal statutes." *Gibson v. United States*, 781 F.2d 1334, 1338 (9th Cir. 1986).  "Liability under section 1983 arises only upon a showing of personal participation by the defendant." *Taylor v. List*, 880 F.2d 1040, 1045 (9th Cir. 1989); *accord Iqbal*, 556 U.S. at 677.

#### B.   Legal Standards for Unlawful Arrest

"A claim for unlawful arrest is cognizable under § 1983 as a violation of the Fourth Amendment, provided the arrest was without probable cause or other justification." *Dubner v. City & County of San*

*United States District Court*
*For the Northern District of California*

United States District Court
For the Northern District of California

*Francisco*, 266 F.3d 959, 965 (9th Cir. 2001); *accord Harper v. City of L.A.*, 533 F.3d 1010, 1022 (9th Cir. 2008) ("An arrest without probable cause violates the Fourth Amendment and gives rise to a claim for damages under § 1983."). To maintain an action for false arrest, the plaintiff "must plead facts that would show [defendant] ordered or otherwise procured the arrests and the arrests were without probable cause." *Lacey v. Maricopa County*, 693 F.3d 896, 918 (9th Cir. 2012).

"Probable cause exists when, under the totality of the circumstances known to the arresting officers (or within the knowledge of the other officers at the scene), a prudent person would believe that the suspect had committed a crime." *Dubner*, 266 F.3d at 966; *accord United States v. Lopez*, 482 F.3d 1067, 1072 (9th Cir. 2007) ("Probable cause to arrest exists when officers have knowledge or reasonably trustworthy information sufficient to lead a person of reasonable caution to believe that an offense has been or is being committed by the person being arrested."). "While conclusive evidence of guilt is of course not necessary under this standard to establish probable cause, '[m]ere suspicion, common rumor, or even strong reason to suspect are not enough.'" *Lopez*, 482 F.3d at 1072. "While an officer may not ignore exculpatory evidence that would negate a finding of probable cause, [o]nce probable cause is established, an officer is under no duty to investigate further or to look for additional evidence which may exculpate the accused." *Tsao v. Desert Palace, Inc.*, 698 F.3d 1128, 1147 (9th Cir. 2012) (quotation marks omitted).

"Probable cause is an objective standard. The arresting officers' subjective intention . . . is immaterial in judging whether their actions were reasonable for Fourth Amendment purposes." *Lopez*, 482 F.3d at 1072. Therefore, an arrest is lawful if the officer "had probable cause to arrest [the suspect] for *any* offense." *Tsao*, 698 F.3d at 1147 (emphasis in original). Further, "[u]nder the collective knowledge doctrine, in determining whether probable cause exists for arrest, courts look to 'the collective knowledge of all the officers involved in the criminal investigation.'" *Harper v. City of L.A.*, 533 F.3d 1010, 1022 (9th Cir. 2008).

**C.      Plaintiff's Unlawful Arrest Claim Against Defendants Woo, Khalili and McVeigh**

Defendants Woo, Khalili and McVeigh argue that this claim should be dismissed because plaintiff's arrest for violation of California Penal Code § 76 was supported by probable cause. Docket

7

No. 21 at 6.  California Penal Code § 76 provides:

> (a) Every person who knowingly and willingly threatens the life of, or threatens serious bodily harm to, any elected public official, county public defender, county clerk, exempt appointee of the Governor, judge, or Deputy Commissioner of the Board of Prison Terms, or the staff, immediate family, or immediate family of the staff of any elected public official, county public defender, county clerk, exempt appointee of the Governor, judge, or Deputy Commissioner of the Board of Prison Terms, with the specific intent that the statement is to be taken as a threat, and the apparent ability to carry out that threat by any means, is guilty of a public offense . . . .

> (c) For purposes of this section, the following definitions shall apply:

> (1) "Apparent ability to carry out that threat" includes the ability to fulfill the threat at some future date when the person making the threat is an incarcerated prisoner with a stated release date.

> (2) "Serious bodily harm" includes serious physical injury or serious traumatic condition.

> . . .

> (5) "Threat" means a verbal or written threat or a threat implied by a pattern of conduct or a combination of verbal or written statements and conduct made with the intent and the apparent ability to carry out the threat so as to cause the person who is the target of the threat to reasonably fear for his or her safety or the safety of his or her immediate family.

"[T]he essence of a violation of section 76 is the making of a statement with the intent that it be taken as a threat, along with the apparent ability to carry out the threat, resulting in actual reasonable fear on the part of the victim."  *People v. Barrios*, 163 Cal. App. 4th 270, 277 (2008).

In the FAC, plaintiff has failed to allege sufficient facts showing that his arrest for violation of California Penal Code § 76 was without probable cause.  Whether there was probable cause depends on the totality of the circumstances known to the arresting officers at the time of the arrest and if, under those known circumstances, a prudent person would believe that plaintiff knowingly and willingly threatened to kill an elected public official or the staff of an elected public official.  *See Dubner*, 266 F.3d at 966.

Plaintiff alleges that detective Woo was provided with Mr. Sinnott's email summarizing his earlier conversation with Mr. McLeod.  FAC ¶ 87.  In the email, Mr. Sinnott states that plaintiff told Mr. McLeod that he was going to kill Mayor Len Rifkind.  *Id.* ¶ 82; Docket No. 12, RJN Ex. 1 at 8.  Mr. Sinnott also stated in the email that during his conversation with Mr. McLeod, plaintiff stated that "he 'chased the mayor out to the freeway a few days ago with the intent to do harm but couldn't catch up

to him.'"  Docket No. 12, RJN Ex. 1 at 8.  Plaintiff alleges that Mr. Sinnott's claims were false.  *Id.* ¶ 83.  But, even accepting this as true, plaintiff does not allege any facts showing that detective Woo should have known that the claims in the email were false prior to plaintiff's arrest.[7]

Plaintiff also alleges that prior to his interview with Mr. McLeod, detective Woo was informed that Mr. McLeod would not confirm that Len Rifkind was mentioned in his conversation with plaintiff. FAC ¶¶ 88, 126.  However, plaintiff does not allege whether during the interview and prior to plaintiff's arrest[8] Mr. McLeod later identified Mayor Rifkind as the victim of plaintiff's threats.  Indeed, plaintiff does not allege what Mr. McLeod said during the interview, and plaintiff's allegations about the interview are mostly incoherent.  *See id.* ¶¶ 127-28 ("During the interview, *Defendant Detective Woo* continued that the 'Mayor.'  Defendant Detective Woo did not attempt to identify another name.").  Moreover, in his opposition to the motion, plaintiff appears to state that Mayor Rifkind was identified as the victim by Mr. McLeod during his interview with detective Woo.  *See* Docket No. 24 at 5 ("*Defendant Detective WOO* continued to suggest that 'the Mayor' was mentioned (FAC ¶¶ 126-27) resulting in the misidentification of the Mayor Len Rifkind by the witness.").  Thus, it appears from plaintiff's allegations that at the time of his arrest, detective Woo potentially had both the email from Mr. Sinnott stating that plaintiff threatened to kill Mayor Rifkind and Mr. McLeod's statement during the interview identifying Mayor Rifkind as the victim of plaintiff's threats.  Accordingly, taking these allegations as true, plaintiff has failed to plead sufficient facts to raise his right to relief above the speculative level.  *See Twombly*, 550 U.S. at 555.  Specifically, plaintiff has failed to allege sufficient

[7] In addition, it is unclear from plaintiff's allegations whether Mr. Sinnott's statements in the email were actually false.  In the FAC, plaintiff alleges that Mr. McLeod told Mr. Sinnott that plaintiff made threatening statements about three people.  FAC ¶ 77.  But, plaintiff does not allege the identities of these three people, or allege that none of them were potentially the mayor or some other elected public official or the staff of an elected public official.  The Court recognizes that plaintiff alleges in the FAC that Mr. McLeod did not identify Mayor Len Rifkind and that Mr. McLeod would not confirm that plaintiff mentioned Len Rifkind.  FAC ¶¶ 88, 122, 126.  However, the fact that Mr. McLeod did not identify the victim specifically as Mayor Len Rifkind does not preclude Mr. McLeod from referring to Mr. Rifkind in some other manner such as by referring to him by his title as City Council Member or Police Council Member.  *Cf.* FAC ¶¶ 6, 46, 52, 55-56 (referring to Leonard Rifkind as Defendant Police Council Member / City Council Member Rifkind).

[8] In the FAC, plaintiff alleges that detective Woo's interview with Mr. McLeod began at approximately 3:30 p.m. and that plaintiff was arrested shortly after 4:00 p.m.  FAC ¶¶ 94-95.  Therefore, Mr. McLeod was interviewed for approximately 30 minutes prior to plaintiff's arrest.

United States District Court
For the Northern District of California

facts showing that the officers lacked probable cause for his arrest.  Accordingly, the Court dismisses without prejudice plaintiff's claim for unlawful arrest against defendants Woo, Khalili, and McVeigh.

**D.    Plaintiff's Unlawful Arrest Claim Against Defendant Sinnottt**

Defendant Sinnott argues that plaintiff's claim for unlawful arrest against him should be dismissed because plaintiff has failed to allege that defendant Sinnott's acts were committed under color of state law and because plaintiff has failed to allege facts showing that defendant Sinnott's actions resulted in plaintiff's allegedly unlawful arrest.  Docket No. 22 at 11-16.

"There is no 'rigid formula' for determining whether a state or local law official is acting under color of state law." *Anderson v. Warner*, 451 F.3d 1063, 1068 (9th Cir. 2006).  State employment is generally sufficient to render the defendant a state actor, but whether a defendant is acting under color of state law turns on the nature and circumstances of the defendant's conduct and the relationship of that conduct to the performance of his official duties. *Id.*; *see also United States v. Classic*, 313 U.S. 299, 326 (1941) ("Misuse of power, possessed by virtue of state law and made possible only because the wrongdoer is clothed with the authority of state law, is action taken 'under color of' state law.").  To establish that the defendant was "acting under the color of state law," a plaintiff must show that: (1) defendant's conduct was performed while acting, purporting to act, or pretending to act in the performance of official duties; (2) defendant's conduct must have had the purpose and effect of influencing the behavior of others; and (3) the challenged conduct must have been related in some meaningful way either to defendant's governmental status or to the performance of his duties. *Anderson*, 451 F.3d at 1068-69.

In support of his claim for false arrest against defendant Sinnott, plaintiff alleges that Mr. Sinnott made false allegations in his email to Captain Shirk regarding his conversation with Mr. McLeod.  FAC at 19.  Plaintiff alleges that Mr. Sinnott was acting in his individual capacity and in his official capacity as the Deputy City Manager of the City of Larkspur.  FAC ¶ 12.  But, plaintiff does not allege facts showing that when Mr. Sinnott sent the email to Captain Shirk he acting or purporting to act in the performance of his official duties as a Deputy City Manager.  In addition, plaintiff does not allege any facts showing that reporting suspected criminal activity to the police was related in any way to Mr.

United States District Court
For the Northern District of California

1   Sinnott's government status or to the performance of his official duties as a Deputy City Manager.

2   "[M]erely complaining to the police does not convert a private party into a state actor." *Collins v.*

3   *Womancare*, 878 F.2d 1145, 1155 (9th Cir. 1989); *accord Dietrich v. John Ascuaga's Nugget*, 548 F.3d

4   892, 901 (9th Cir. 2008). This is true even if the private party is an off-duty state or city employee. *See,*

5   *e.g.*, *Rojsza v. City of Ferndale*, No. C12-1149 MJP, 2012 U.S. Dist. LEXIS 170598, at *5-8 (W.D.

6   Wash. Nov. 29, 2012) (finding allegations that an off-duty police officer defendant reported suspected

7   criminal activity to the police insufficient to establish that the defendant was acting under color of state

8   law); *Brown v. Thalacker*, No. 6:11-cv-06120-HO, 2012 U.S. Dist. LEXIS 30306, at *9-10 (D. Or. Mar.

9   6, 2012) (finding allegations that a municipal employee reported suspected criminal activity to the police

10   insufficient to establish that the defendant was acting under color of state law). Therefore, plaintiff has

11   failed to allege sufficient facts showing that defendant Sinnott was acting under color of state law when

12   he sent the email to Captain Shirk.

13         Plaintiff alleges that defendants Wood, Khalili, McVeigh, and Sinnott acted as part of a common

14   plan to unlawfully arrest him. FAC at 18. A § 1983 claim may lie against a private party who is a

15   willful participant in joint action with the State or its agents. *Dietrich*, 548 F.3d at 899-900. "A plaintiff

16   may demonstrate joint action by proving the existence of a conspiracy or by showing that the private

17   party was 'a willful participant in joint action with the State or its agents.'" *Franklin v. Fox*, 312 F.3d

18   423, 445 (9th Cir. 2002). However, "a substantial degree of cooperation" is required before liability will

19   be imposed on private parties for acting jointly with state actors. *Id.* "To establish liability for a

20   conspiracy in a § 1983 case, a plaintiff must 'demonstrate the existence of an agreement or meeting of

21   the minds' to violate constitutional rights." *Crowe v. County of San Diego*, 608 F.3d 406, 440 (9th Cir.

22   2010); *accord Olsen v. Idaho State Bd. of Med.*, 363 F.3d 916, 929 (9th Cir. 2004) ("To state a claim

23   for conspiracy to violate constitutional rights, 'the plaintiff must state specific facts to support the

24   existence of the claimed conspiracy.'"). "'Such an agreement need not be overt, and may be inferred

25   on the basis of circumstantial evidence such as the actions of the defendants.'" *Crowe*, 608 F.3d at 440.

26   But, "[a] mere allegation of conspiracy without factual specificity is insufficient." *Karim-Panahi v. L.A.*

27   *Police Dep't*, 839 F.2d 621, 626 (9th Cir. 1988). Here, plaintiff has failed to allege any facts showing

28   there was an overt or implicit agreement between defendant Sinnott and the defendant police officers

1   to violate plaintiff's constitutional rights.  The only contact alleged between defendant Sinnott and the

2   defendant police officers is Sinnott's sending of the email to Captain Shirk.  But, "merely complaining

3   to the police does not convert a private party into a state actor."  *Collins*, 878 F.2d at 1155; *accord*

4   *Dietrich*, 548 F.3d at 901.  Accordingly, plaintiff has failed to allege sufficient facts showing that

5   defendant Sinnott was acting under color of state law with respect to plaintiff's claim for unlawful

6   arrest, and, therefore, the Court dismisses without prejudice plaintiff's claim for unlawful arrest against

7   defendant Sinnott.

8

9   **III.    Plaintiff's Cause of Action for Retaliation**

10      In the FAC, plaintiff alleges a cause of action against defendants Woo, Schwarz, Rifkind,

11  Sinnott, and Huisman pursuant to 42 U.S.C. § 1983 for retaliation in violation of his first amendment

12  rights.  FAC at 27-28.  Specifically, plaintiff alleges that these defendants caused him to be unlawfully

13  arrested and prosecuted in retaliation for plaintiff engaging in free speech related to his proposed project

14  with the City of Larkspur, including requesting public records from the City of Larkspur, filing Appeals

15  to the City Council to compel staff to adhere to the City laws, filing an Appeal to the City Planning

16  Director's decision, and informing members of the City Council that its staff did not comply with City

17  laws. *Id.*  Defendants argue that this claim should be dismissed because plaintiff has failed to allege that

18  defendants Woo and Sinnott's actions were motivated by plaintiff's communications with the City

19  regarding his proposed project.  Docket No. 21 at 16-17; Docket No. 45 at 8.  In addition, the City

20  defendants argue that plaintiff has failed to allege any facts showing that the defendants entered into a

21  conspiracy to violate plaintiff's constitutional rights.  Docket No. 22 at 18.

22      "Official reprisal for protected speech offends the Constitution [because] it threatens to inhibit

23  exercise of the protected right[;] . . . the First Amendment prohibits government officials from

24  subjecting an individual to retaliatory actions, including criminal prosecutions, for speaking out." *Lacey*

25  *v. Maricopa County*, 693 F.3d 896, 916 (9th Cir. 2012) (en banc) (quotation marks omitted).  In order

26  to demonstrate a First Amendment violation, a plaintiff must allege facts showing that (1) the

27  defendant's conduct would chill a person of ordinary firmness from future First Amendment activity,

28  and (2) that the defendant's desire to chill plaintiff's speech was a but-for cause of his allegedly

United States District Court
For the Northern District of California

unlawful conduct.  *Id.* at 917; *Ford v. City of Yakima*, 706 F.3d 1188, 1193 (9th Cir. 2013).

Here, plaintiff has failed to satisfy the second element of his retaliation claim.  "To satisfy the second requirement, the [allegations] must be sufficient to establish that the officers' desire to chill [plaintiff's] speech was a but-for cause of their conduct.  In other words, would [plaintiff] have been booked and jailed, rather than cited and arrested, but for the officers' desire to punish [plaintiff] for his speech?"  *Ford*, 706 F.3d at 1194; *see also Mendocino Envtl. Ctr. v. Mendocino Cnty.*, 192 F.3d 1283, 1300 (9th Cir. 1999) (explaining that "[i]ntent to inhibit speech" is an element of a claim for retaliation).  In the FAC, plaintiff has failed to allege sufficient facts showing that the defendants had a desire or intent to chill plaintiff's speech.  To support his claim for retaliation, plaintiff relies on actions taken by defendant Sinnott and Woo.  Plaintiff alleges that defendant Sinnott retaliated against him by sending an email with false allegations to Captain Shirk and by withholding information regarding staff misconduct, and plaintiff alleges that defendant Woo retaliated against plaintiff by arresting him.  FAC at 27.  However, plaintiff does not allege that defendants Sinnott and Woo were aware of any of plaintiff's relevant free speech activity.  There are no allegations in the FAC showing that defendants Sinnott and Woo were aware of plaintiff's communications with the City regarding his proposed project.  In addition, as explained above, plaintiff has failed to allege sufficient facts showing that his arrest was without probable cause.  Therefore, plaintiff has failed to properly state a claim for retaliation.  *See Dietrich*, 548 F.3d at 901 (rejecting plaintiff's retaliation claim as a matter of law where there was no evidence that the officers were aware of the plaintiff's free speech activity and the officers had probable cause for their actions).

Based on the allegations in the FAC, the only defendants who knew about plaintiff's free speech activities were defendants Rifkind, Schwarz, and Huisman.  *See* FAC ¶¶ 46, 52, 55-56, 58, 60-63, 65, 67.  Plaintiff alleges that defendants Rifkind, Schwarz, Huisman, Sinnott, and Woo acted as part of a common plan to retaliate against plaintiff in violation of his First Amendment rights.  FAC at 27.  "To establish liability for a conspiracy in a § 1983 case, a plaintiff must 'demonstrate the existence of an agreement or meeting of the minds' to violate constitutional rights."  *Crowe*, 608 F.3d at 440; *accord Olsen*, 363 F.3d at 929 ("To state a claim for conspiracy to violate constitutional rights, 'the plaintiff must state specific facts to support the existence of the claimed conspiracy.'").  "'Such an agreement

United States District Court
For the Northern District of California

1    need not be overt, and may be inferred on the basis of circumstantial evidence such as the actions of the

2    defendants.'" *Crowe*, 608 F.3d at 440.  But, "[a] mere allegation of conspiracy without factual

3    specificity is insufficient." *Karim-Panahi*, 839 F.2d at 626.  Here, plaintiff has failed to allege any facts

4    showing there was an overt or implicit agreement between any of these defendants to violate plaintiff's

5    constitutional rights.  Indeed, plaintiff does not allege any facts showing that defendants Rifkind,

6    Schwarz, or Huisman ever had a discussion with defendants Sinnott or Woo regarding plaintiff or his

7    proposed project.  Therefore, plaintiff has failed to adequately allege that these defendants conspired

8    to retaliate against him in violation of his constitutional rights. *See Olsen*, 363 F.3d at 929-30 (affirming

9    the dismissal of plaintiff's conspiracy claim where the complaint was "devoid of any discussion of an

10    agreement amongst the [defendants] to violate her constitutional rights").  Accordingly, the Court

11    dismisses without prejudice plaintiff's cause of action of action for retaliation.

12

13    **IV.    Plaintiff's Cause of Action for Supervisor Liability**

14        As his third cause of action, plaintiff alleges a § 1983 claim against defendant Shirk for

15    supervisory liability based on the alleged violations of plaintiff's First and Fourth Amendment rights.[9]

16    FAC at 21-22.  "There is no respondeat superior liability under section 1983." *Taylor*, 880 F.2d at 1045.

17    "A supervisor is liable under § 1983 for a subordinate's constitutional violations 'if the supervisor

18    participated in or directed the violations, or knew of the violations and failed to act to prevent them.'"

19    *Maxwell v. County of San Diego*, 708 F.3d 1075, 1086 (9th Cir. 2013).

20        For a supervisor to be liable for his subordinate's constitutional violations, the plaintiff must

21    properly plead that the supervisor's subordinates violated his constitutional rights. *See Starr v. Baca*,

22    652 F.3d 1202, 1207 (9th Cir. 2011) ("The law clearly allows actions against supervisors under section

23    1983 as long as a sufficient causal connection is present <u>and the plaintiff was deprived under color of</u>

24    <u>law of a federally secured right</u>." (emphasis added)) *see, e.g.*, *Corales v. Bennett*, 567 F.3d 554, 570 (9th

25    Cir. 2009) ("[B]ecause Plaintiffs have failed to establish any triable issue of fact as to any of their

26

27        [9] In the FAC as part of this claim, plaintiff also alleged that his Fourteenth Amendment rights
28    were violated.  FAC at 21.  However, in his opposition, plaintiff states that he does not object to the
     Court striking the Fourteenth Amendment allegations from this claim.  Docket No. 24 at 9.

14

1   constitutional claims, a supervisory claim against Kinley is not sustainable.").  As explained above,

2   plaintiff has failed to adequately allege a violation of First or Fourth Amendment rights.  Accordingly,

3   the Court dismisses without prejudice plaintiff's third cause of action for supervisory liability against

4   defendant Shirk.

5

6   **V.    Plaintiff's Cause of Action for *Monell*[10] Liability**

7           As his fifth cause of action, plaintiff alleges a § 1983 claim against defendants Central Marin

8   Police Authority and the City of Larkspur for municipal liability based on the alleged violations of

9   plaintiff's First and Fourth Amendment rights.[11]  FAC at 25-26.  "Section 1983 suits against local

10  governments alleging constitutional rights violations by government officials cannot rely solely on

11  respondeat superior liability."  *AE v. County of Tulare*, 666 F.3d 631, 636 (9th Cir. 2012).  "In order to

12  establish liability for governmental entities under *Monell*, a plaintiff must prove '(1) that [the plaintiff]

13  possessed a constitutional right of which [s]he was deprived; (2) that the municipality had a policy; (3)

14  that this policy amounts to deliberate indifference to the plaintiff's constitutional right; and, (4) that the

15  policy is the moving force behind the constitutional violation.'"  *Dougherty v. City of Covina*, 654 F.3d

16  892, 900 (9th Cir. 2011).

17          Here, plaintiff's allegations fail to satisfy the first element from the above test.  As explained

18  above, plaintiff has failed to adequately allege a violation of his First or Fourth Amendment rights.

19  Therefore, plaintiff has failed to allege that he possessed a constitutional right of which he was deprived.

20  Accordingly, the Court dismisses without prejudice plaintiff's fifth cause of action for *Monell* liability

21  against defendants Central Marin Police Authority and the City of Larkspur.

22

23

24

25

26          [10] *Monell v. Dep't of Soc. Servs. of the City of New York*, 436 U.S. 658, 694 (1978).

27          [11] In the FAC as part of this claim, plaintiff also alleged that his Fourteenth Amendment rights
        were violated.  FAC at 25-26.  However, in his opposition, plaintiff states that he does not object to the
28      Court striking the Fourteenth Amendment allegations from this claim.  Docket No. 24 at 10-11.

United States District Court
For the Northern District of California

United States District Court
For the Northern District of California

## VI.   Plaintiff's Causes of Action for Abuse of Process and Intentional Infliction of Emotional Distress

As his seventh and eighth causes of action, plaintiff alleges state law claims against defendants Sky Woodruff and Anita Rimes for abuse of process and intentional infliction of emotional distress. FAC  at 28-30.  Plaintiff alleges that defendant Rimes filed and prosecuted a Workplace Violence Restraining Order against plaintiff at the request of the City of Larkspur.  *Id.* at 28.  Plaintiff alleges that the petition contained false statements, that the defendants offered perjured testimony at the hearing on the petition, and that the filing and prosecution of the restraining order was done for ulterior motives. *Id.* at 28-29.  Defendants Woodruff and Rimes move to dismiss these two claims for failure to state a claim.  Docket No. 25.  In addition, defendants Woodruff and Rimes move pursuant to California's Anti-SLAPP[12] statute to strike these two claims and for $8,106.00 in attorney's fees.  *Id.*

California Code of Civil Procedure § 425.16(b)(1) provides:  "[a] cause of action against a person arising from any act of that person in furtherance of the person's right of petition or free speech . . . in connection with a public issue shall be subject to a special motion to strike, unless the court determines that the plaintiff has established that there is a probability that the plaintiff will prevail on the claim."  "California's anti-SLAPP statute, enacted in 1992, provides 'for the early dismissal of unmeritorious claims filed to interfere with the valid exercise of the constitutional rights of freedom of speech and petition for the redress of grievances.'"  *Greater L.A. Agency on Deafness, Inc. v. CNN, Inc.*, 742 F.3d 414, 421 (9th Cir. 2014).  "[D]efendants sued in federal courts can bring anti-SLAPP motions to strike state law claims and are entitled to attorneys' fees and costs when they prevail."  *Verizon Del., Inc. v. Covad Communs. Co.*, 377 F.3d 1081, 1091 (9th Cir. 2004).

In determining whether a cause of action must be stricken under the broadly construed anti-SLAPP statute, courts engage in a two-step inquiry.  *CNN*, 742 F.3d at 422.  First, the court must determine whether the defendant has made a prima facie showing that the plaintiff's action arises from conduct in furtherance of the exercise of defendant's constitutional right of petition or free speech in connection with an issue of public interest.  *Id.*  If the defendant satisfies this threshold showing, the

---

[12] "SLAPP is an acronym for 'strategic lawsuit against public participation.'"  *Oasis West Realty, LLC v. Goldman*, 51 Cal. 4th 811, 815 n.1 (2011).

16

United States District Court
For the Northern District of California

1   burden then shifts to the plaintiff at the second step to establish, by competent evidence, a probability

2   that it will prevail on its claims.  *Id.*

3

4   **A.**     **Right of Petition or Free Speech**

5         At the first step of the anti-SLAPP analysis, the court must determine whether plaintiff's state

6   law claims are based on conduct in furtherance of defendants' right of petition or free speech in

7   connection with a matter of public interest.  *CNN*, 742 F.3d at 422.  California Code of Civil Procedure

8   § 425.16(e) provides that the term "'act in furtherance of a person's right of petition or free speech under

9   the United States or California Constitution in connection with a public issue' includes: (1) any written

10  or oral statement or writing made before a legislative, executive, or judicial proceeding, or any other

11  official proceeding authorized by law, [and] (2) any written or oral statement or writing made in

12  connection with an issue under consideration or review by a legislative, executive, or judicial body, or

13  any other official proceeding authorized by law . . . ."  California courts "have interpreted this piece of

14  the defendant's threshold showing rather loosely."  *Hilton v. Hallmark Cards*, 599 F.3d 894, 904 (9th

15  Cir. 2010).

16        A claim for relief filed in court is "indisputably a statement or writing made before a judicial

17  proceeding," and is, therefore, subject to the anti-SLAPP statute.  *Navellier v. Sletten*, 29 Cal. 4th 82,

18  90 (2002); *accord Rusheen v. Cohen*, 37 Cal. 4th 1048, 1056 (2006) ("'Any act' includes

19  communicative conduct such as the filing, funding, and prosecution of a civil action.").

20  "'[C]ommunications preparatory to or in anticipation of the bringing of an action or other official

21  proceeding'" are also subject to the anti-SLAPP statute.  *Briggs v. Eden Council for Hope &*

22  *Opportunity*, 19 Cal. 4th 1106, 1115 (1999). "This includes qualifying acts committed by attorneys in

23  representing clients in litigation."  *Rusheen*, 37 Cal. 4th at 1056; *see also Briggs*, 19 Cal. 4th at 1116

24  ("[T]he [anti-SLAPP] statute does not require that a defendant moving to strike under section 425.16

25  demonstrate that its protected statements or writings were made *on its own behalf* . . . ." (emphasis in

26  original)).  Further, "a defendant moving to strike a cause of action arising from a statement made

27  before, or in connection with an issue under consideration by, a legally authorized official proceeding

28  need *not* separately demonstrate that the statement concerned an issue of public significance."  *Briggs*,

1    19 Cal. 4th at 1123 (emphasis in original).

2          Plaintiff's two state law claims are based on defendant Woodruff and Rimes's preparation,

3    initiation and prosecution of a workplace violence restraining order against plaintiff filed before the

4    Marin County Superior Court.  FAC at 28-30.  Therefore, defendants Woodruff and Rimes have met

5    their burden of showing that plaintiff's two state law claims are based on conduct in furtherance of

6    defendants' right of petition or free speech in connection with a matter of public interest.  *See Rusheen*,

7    37 Cal. 4th at 1056; *Navellier*, 29 Cal. 4th at 90.

8

9          **B.          Probability of Success on the Merits**

10          "To satisfy its burden under the second step, [the plaintiff] must demonstrate that its claims have

11   'only a minimum level of legal sufficiency and triability.'"  *CNN*, 742 F.3d at 425.  To satisfy this

12   standard, "the plaintiff must 'demonstrate that the complaint is both legally sufficient and supported by

13   a sufficient prima facie showing of facts to sustain a favorable judgment if the evidence submitted by

14   the plaintiff is credited.'"  *Wilson v. Parker, Covert & Chidester*, 28 Cal. 4th 811, 821 (2002); *see also*

15   *Makaeff v. Trump Univ., LLC*, 715 F.3d 254, 261 (9th Cir. 2013) ("[T]he claim should be dismissed if

16   the plaintiff presents an insufficient legal basis for it, or if, on the basis of the facts shown by the

17   plaintiff, 'no reasonable jury could find for the plaintiff.'").  In determining whether plaintiff has

18   satisfied this burden, "[t]he court is to consider 'the pleadings, and supporting and opposing affidavits

19   stating the facts upon which the liability or defense is based.'"  *Mindys Cosmetics, Inc. v. Dakar*, 611

20   F.3d 590, 598 (9th Cir. 2010).

21          Defendants Woodruff and Rimes argue that plaintiff's claims for abuse of process and intentional

22   infliction of emotion distress have no probability of success because both claims are barred by

23   California's litigation privilege, California Civil Code § 47.  Docket No. 25 at 9-11.  The California

24   Supreme Court has noted that the California litigation privilege is relevant to the second step of the

25   anti-SLAPP analysis as "it may present a substantive defense a plaintiff must overcome to demonstrate

26   a probability of prevailing."  *Flatley v. Mauro*, 39 Cal. 4th 299, 323 (2006).  The California litigation

27   privilege applies to "any communication (1) made in judicial or quasi-judicial proceedings; (2) by

28   litigants or other participants authorized by law; (2) to achieve the objects of the litigation; and (4) that

18

United States District Court
For the Northern District of California

have some connection or logical relation to the action." *Silberg v. Anderson*, 50 Cal. 3d 205, 212 (1990); *see also* Cal. Civ. Code § 47(b).  The purposes of the litigation privilege "are to afford litigants and witnesses free access to the courts without fear of being harassed subsequently by derivative tort actions, to encourage open channels of communication and zealous advocacy, to promote complete and truthful testimony, to give finality to judgments, and to avoid unending litigation." *Rusheen*, 37 Cal. 4th at 1063.  "'[I]n furtherance of the public policy purposes it is designed to serve, the privilege prescribed by section 47(2) has been given broad application.'" *Id.*; *see also Action Apartment Assn., Inc. v. City of Santa Monica*, 41 Cal. 4th 1232, 1241 (2007) ("[W]e have given the litigation privilege a broad interpretation.").

The California litigation privilege is "an 'absolute' privilege, and it bars all tort causes of action except a claim for malicious prosecution." *Hagberg v. Cal. Fed. Bank*, 32 Cal. 4th 350, 360 (2004); *see also Rusheen*, 37 Cal. 4th at 1058 (holding that the litigation privilege applies to claims for abuse of process); *Ribas v. Clark*, 38 Cal. 3d 355, 364 (1985) (holding that the litigation privilege applies to claims for intentional infliction of emotional distress).  The privilege is applicable to any communication, whether or not it amounts to a publication. *Silberg*, 50 Cal. 3d at 212.  Moreover, the privilege "encompasses not only testimony in court and statements made in pleadings, but also statements made prior to the filing of a lawsuit, whether in preparation for anticipated litigation or to investigate the feasibility of filing a lawsuit." *Hagberg*, 32 Cal. 4th at 361; *see also Rusheen*, 37 Cal. 4th at 1057 ("[The litigation privilege] is not limited to statements made during a trial or other proceedings, but may extend to steps taken prior thereto, or afterwards.").

Plaintiff's two state law claims are based on defendant Woodruff and Rimes's preparation, initiation and prosecution of a work place violence restraining order against plaintiff filed before the Marin County Superior Court.  FAC at 28-30.  Plaintiff alleges that the two defendants conspired to submit a petition that contained false allegations and false statements and to withhold certain declarations from the petition.  *Id.* at 28-29.  Plaintiff also alleges that the defendants knew that defendants Sinnott and Rifkind would give false and misleading testimony at the hearing on the petition. *Id.* at 29.  In addition, plaintiff alleges that defendant Woodruff did not inform defendant Rimes about the false and misleading statements in the declarations prior to the hearing.  *Id.*  Here, plaintiff's claims

United States District Court
For the Northern District of California

challenge communications made by the defendants during their litigation before the Marin County Superior Court in regards to their petition for a restraining order that had a logical relation to the action. Therefore, plaintiff's state law claims against defendants Woodruff and Rimes are barred by the litigation privilege. *See Rusheen*, 37 Cal. 4th at 1058 ("The privilege has been applied specifically in the context of abuse of process claims alleging the filing of false or perjurious testimony or declarations."); *Rubin v. Green*, 4 Cal. 4th 1187, 1193 (1993) (holding that "communications with 'some relation' to judicial proceedings" are absolutely immune from tort liability by the litigation privilege).

Indeed, in his opposition, plaintiff acknowledges that the litigation privilege likely applies to his claims against defendant Rimes. Docket No. 46 at 2. But, plaintiff argues that the litigations privilege does not apply to defendant Woodruff's actions because he merely performed the managerial function of assigning an associate attorney, Rimes, to handle a legal matter. *Id.* However, plaintiff's contention does not match the allegations that are contained in the first amended complaint. In the FAC, plaintiff does not challenge Woodruff's decision to assign the matter to Rimes. Rather, plaintiff alleges that Woodruff conspired with Rimes to submit a petition that contained false allegations and false statements. FAC at 28-29. In addition, plaintiff alleges that defendant Woodruff did not inform defendant Rimes about the false and misleading statements in the declarations prior to the hearing. *Id.* Therefore, the gravamen of plaintiff's claims against Woodruff challenge statements or non-statements, i.e., communications, he made in connection with the preparation and prosecution of the restraining order before the Marin County Superior Court. *See Rusheen*, 37 Cal. 4th at 1058 ("The distinction between communicative and noncommunicative conduct hinges on the gravamen of the action."). Accordingly, plaintiff's state law claims against Woodruff are barred by the litigation privilege. *See Rubin*, 4 Cal. 4th at 1193.

In sum, because plaintiff's claims for abuse of process and intentional infliction of emotional distress are barred by the California litigation privilege, plaintiff has failed to show a probability that he will prevail on these claims. *See Flatley*, 39 Cal. 4th at 323. Accordingly, the Court grants defendant Woodruff and Rimes's special motion to strike and their motion to dismiss, and the Court dismisses with prejudice plaintiff's claims for abuse of process and intentional infliction of emotional distress.

United States District Court
For the Northern District of California

1

### C.     Attorney's Fees

2      The "prevailing defendant on a special motion to strike shall be entitled to recover his or her

3   attorney's fees and costs." Cal. Civ. Proc. Code § 425.16(c)(1). "[A]ny SLAPP defendant who brings

4   a successful motion to strike is entitled to mandatory attorney fees." *Ketchum v. Moses*, 24 Cal.4th

5   1122, 1131 (2001). "The dual purpose of this mandatory attorney fee award is to discourage meritless

6   lawsuits and to provide financial relief to the victim of a SLAPP lawsuit 'by imposing the litigation

7   costs on the party seeking to chill the valid exercise of the constitutional rights of freedom of speech and

8   petition for the redress of grievances.'" *City of Los Angeles v. Animal Def. League*, 135 Cal. App. 4th

9   606, 627 n.19 (2006). "The defendant may recover fees and costs only for the motion to strike, not the

10  entire litigation." *Christian Research Institute v. Alnor*, 165 Cal. App. 4th 1315, 1320 (2008).

11     An award of attorney's fees and costs pursuant to section 425.16(c)(1) must be reasonable.

12  *Minichino v. First Cal. Realty*, No. C-11-5185 EMC, 2012 U.S. Dist. LEXIS 177524, at *7 (N.D. Cal.

13  Dec. 14, 2012) (citing *Robertson v. Rodriguez*, 36 Cal. App. 4th 347, 362 (1995) ("We readily conclude

14  section 425.16 similarly authorizes an award of *reasonable* attorney fees to the prevailing party.")

15  (emphasis in original)). "[A] court assessing attorney fees begins with a touchstone or lodestar figure,

16  based on the 'careful compilation of the time spent and reasonable hourly compensation of each attorney

17  . . . involved in the presentation of the case.'" *Ketchum*, 24 Cal. 4th at 1131-32; *see also Morales v. City

18  of San Rafael*, 96 F.3d 359, 363 (9th Cir. 1996) ("The 'lodestar' is calculated by multiplying the number

19  of hours the prevailing party reasonably expended on the litigation by a reasonable hourly rate."). "As

20  the moving party, the prevailing defendant seeking fees and costs bear[s] the burden of establishing

21  entitlement to an award and documenting the appropriate hours expended and hourly rates. To that end,

22  the court may require [a] defendant[] to produce records sufficient to provide a proper basis for

23  determining how much time was spent on particular claims." *Alnor*, 165 Cal. App. 4th at 1320

24  (quotations and citations omitted). A court has broad discretion in determining the reasonable amount

25  of attorney's fees and costs to award. *See Dove Audio, Inc. v. Rosenfeld, Meyer & Susman*, 47 Cal. App.

26  4th 777, 785 (1996).

27     Because defendants Woodruff and Rimes have prevailed on their special motion to strike, they

28  are entitled to a mandatory award of reasonable attorney's fees. *See Ketchum*, 24 Cal. 4th at 1131.

United States District Court
For the Northern District of California

1   However, at this time, the Court cannot calculate a reasonable award of attorney's fees.  In the motion,

2   defendants Woodruff and Rimes request $8,106 in attorney's fees.  Docket No. 25 at 12.  But, in an

3   attached declaration, defendants' counsel explains that this requested amount includes an estimate of

4   the time he thought he would spend in preparing the reply brief and in appearing at the hearing on this

5   motion.  Docket No. 26, Campbell Decl. ¶ 5.  The Court notes that there was no hearing on this motion,

6   and that the reply brief that was filed was approximately three and a half pages.  *See* Docket No. 47.

7   Therefore, defendants must update their request for attorney's fees to properly reflect the amount of

8   hours that were actually expended on the motion.  In addition, the Court notes that the attached

9   declaration does not include records sufficient to provide a proper basis for determining how much time

10  was spent on the particular claims.  Accordingly, the Court GRANTS defendants Woodruff and Rimes'

11  motion for attorney's fees, but ORDERS defendants Woodruff and Rimes to file an updated request for

12  attorney's fees that includes records sufficient to provide a proper basis for determining how much time

13  was spent on particular claims within **fourteen (14) days** from the date this order is filed.

14

15                                              **CONCLUSION**

16          For the foregoing reasons, the Court GRANTS defendants' motions to dismiss plaintiff's first

17  amended complaint and GRANTS plaintiff leave to amend.  Specifically, the Court grants plaintiff leave

18  to amend with respect to his first (unlawful arrest), third (supervisor liability), fifth (*Monell* liability),

19  and sixth (retaliation) causes of action.  The Court DISMISSES WITH PREJUDICE plaintiff's second,

20  fourth, seventh, and eight causes of action.  Should plaintiff choose to file a second amended complaint,

21  it shall be consistent with the terms of this order and must be filed on or before **August 25, 2014**.

22          In addition, the Court GRANTS defendants Woodruff and Rimes's special motion to strike and

23  motion for attorney's fees.  The Court ORDERS defendants Woodruff and Rimes to file an updated

24  request for attorney's fees that includes records sufficient to provide a proper basis for determining how

25  much time was spent on particular claims within **fourteen (14) days** from the date this order is filed.

26          **IT IS SO ORDERED.**

27  Dated: July 25, 2014

28                                                          SUSAN ILLSTON
                                                            United States District Judge